IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROL LEE COLE,

    Plaintiff,

v.

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security
Administration,

    Defendant.

Civ. No. 6:15-cv-01044-PA

OPINION AND ORDER

PANNER, Judge:

Plaintiff Carol Cole brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits under the Social Security Act ("Act"). For the reasons set forth below, the Commissioner's decision is affirmed and this case is dismissed.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On March 22, 2012, plaintiff applied for Disability Insurance Benefits. Tr. 237-43. Her application was denied initially and upon reconsideration. Tr. 152-55, 158-60. On April 29, 2014, a hearing was held before an Administrative Law Judge ("ALJ"), wherein plaintiff was represented by counsel and testified, as did a vocational expert ("VE"). Tr. 29-59. On June 2, 2014, the ALJ issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 14-23. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## STATEMENT OF FACTS

Born on March 5, 1959, plaintiff was 50 years old on the alleged onset date of disability and 55 years old at the time of the hearing. Tr. 45, 237. Plaintiff left school during the tenth grade but later obtained a GED. Tr. 34, 266. She worked previously as a bartender, caregiver, and gas station attendant. Tr. 52, 266. Plaintiff alleges disability as of January 11, 2010, due to depression, anxiety, scoliosis, and degenerative disk disease. Tr. 237, 265.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotations omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled.

At step two, the Commissioner evaluates whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If the claimant does not have a medically determinable, severe impairment, she is not disabled.

At step three, the Commissioner determines whether the claimant's impairments, either singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(d). If so, the claimant is presumptively disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner resolves whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(f). If the claimant can work, she is not disabled; if she

3 – OPINION AND ORDER

cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work existing in significant numbers in the national or local economy. *Yuckert*, 482 U.S. at 141-42; 20 C.F.R. § 404.1520(g). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S FINDINGS

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity "during the period of her alleged onset date of January 11, 2010 through her date last insured of December 31, 2011." Tr. 16. At step two, the ALJ determined that plaintiff's scoliosis, lumbar stenosis, and learning disorder were medically determinable and severe. *Id.* At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 17.

Because she did not establish presumptive disability at step three, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform a limited range of light work as follows:

> [She] is limited to lifting and/or carrying up to 20 pounds occasionally [and] up to 10 pounds frequently. She can stand and/or walk for about 6 hours in an 8-hour day and sit for about 6 hours in an 8-hour day with normal breaks. She must be allowed to alternate between sitting and standing positions throughout the day while remaining on task. She can occasionally stoop [and] can understand and carry out simple instructions.

Tr. 18.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 21. At step five, the ALJ found there were a significant number of jobs in the national and local

4 – OPINION AND ORDER

economy that plaintiff could perform despite her impairments, such as sticker pricer, quality control checker, and tray setter. Tr. 22.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to apply res judicata to the prior ALJ's sedentary exertion determination; (2) finding her not fully credible; (3) rejecting the lay witness testimony of Dolores Lingo, Karen Killinger, and Mariha Contreras; (4) improperly weighing the medical opinions of state agency consulting sources Mary Ann Westfall, M.D., and Linda Jensen, M.D.; (5) neglecting to fully develop the record; and (6) rendering an invalid step five finding.

### I.     Res Judicata

Plaintiff contends that the previous ALJ's finding that she was limited to sedentary level work during the closed period of March 2004 through November 2006 – which coincides plaintiff's motor vehicle accident and return to the workforce, respectively – is entitled to preclusive effect.

Res judicata applies to bar reconsideration of the Commissioner's prior final decisions. *Chavez v. Bowen*, 844 F.2d 691, 693-94 (9th Cir. 1988); 42 U.S.C. § 405(h). As such, adjudicators must adopt an ALJ's previous findings unless "changed circumstances" are present. *Chavez*, 844 F.2d at 693-94. Such circumstances can include the existence of new and material evidence relating to the claimant's functioning, education, or work experience. AR 97–4(9), *available at* 1997 WL 740404; *see also Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008) (prior ALJ's findings "cannot be reconsidered by a subsequent [ALJ] absent new information not presented to the first [ALJ]"). "Medical evaluations conducted after a prior

5 – OPINION AND ORDER

adjudication necessarily constitute new and material evidence." *Nursement v. Astrue*, 477 Fed.Appx. 453, 454 (9th Cir. 2012) (citation omitted).

The ALJ's prior decision became administratively final and binding when the Appeals Council denied plaintiff's request for review. Plaintiff filed a new claim for Disability Insurance Benefits in 2012, asserting essentially the same impairments. *Compare* Tr. 33-51, *with* Tr. 64-81. Nevertheless, there is a significant amount of new and material evidence post-dating the Commissioner's prior final decision, and these portions of the record evince a greater level of functioning. Significantly, plaintiff worked for over three years after November 2006 at a bartending job, which she performed at the heavy exertion level. Tr. 52, 266. She left that position due to an injury sustained while lifting a 160-pound keg. Tr. 40-41, 359. Yet, as of January 2010, Thomas Thrall, M.D., opined that plaintiff's on-the-job injury had "[r]esolved" and cleared her to "return . . . to full duty" work. Tr. 349. Further, of the four treatment notes from the present adjudication period, only two pertain to plaintiff's allegedly disabling impairments. *Compare* Tr. 370, 373, *with* Tr. 366, 377.

The ALJ expressly cited to this, and other, evidence that post-dated the prior administrative decision in formulating plaintiff's RFC and finding her not disabled. Tr. 19-21. In fact, while plaintiff concludes "[b]oth ALJs considered the same evidence," she relies on chart notes that were generated between 2007 and 2011 in support of her present claim. *See, e.g.*, Pl.'s Opening Br. 9-10, 12-14. Because the current ALJ analyzed new and material evidence, res judicata is inapplicable.

## II.  Plaintiff's Testimony

Plaintiff asserts that the ALJ wrongfully discredited her subjective symptom statements concerning the severity of her impairments. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the "ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

At the hearing, plaintiff testified that she is unable to work due to anxiety and constant pain, which requires her to frequently alternate between sitting and standing. Tr. 44, 47-49. She explained that she has trouble sleeping, and does not recline during the day, because it is "too uncomfortable." Tr. 49-50. Plaintiff testified that her daily activities consist of visiting with her children, watching television, and performing minor household chores. Tr. 46-47. In the past year, plaintiff also reported obtaining her GED, participating in vocational rehabilitation, and completing two terms of community college. Tr. 34, 42.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her statements regarding the extent of these symptoms were not fully credible due to her history of conservative treatment and stopping work for reasons unrelated to her disability, as well as the lack of corroborating medical evidence. Tr. 19-21.

Notably, the ALJ determined that plaintiff has "been non-compliant with her treatment on multiple occasions and despite multiple admonishments." Tr. 20-21. An ALJ may discredit a claimant due to an "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citations and internal quotations omitted); SSR 96-7p, *available at* 1996 WL 374186. Plaintiff frequently failed to comply with the recommendations of treating physician Gary Goby, M.D., despite the fact that he warned against such practices. *See, e.g.*, Tr. 366-68, 373, 377, 386, 389, 430-31, 478. For instance, in January 2010, Dr. Goby noted that plaintiff "has a long history of noncompliance and no follow-up with recommendations" – specifically citing her refusal to seek evaluation and treatment for her abnormal menstrual cycles and history of endometrial hyperplasia – and counseled her that such "poor decisions . . . could result in catastrophic consequences." Tr. 377. In November 2011, Dr. Goby referred plaintiff to psychiatric treatment; when plaintiff reported she did not have insurance, Dr. Goby "encouraged [her to] seek counseling through County mental health." Tr. 367-68. However, there is no indication that

8 – OPINION AND ORDER

plaintiff looked into or otherwise sought any mental health services, even though she subsequently obtained insurance.[1] Tr. 4, 47-48.

The ALJ also found that plaintiff's credibility was impugned because "over the time period at issue she . . . was seen no more than twice related to back complaints." Tr. 20-21. An ALJ may consider a claimant's failure to report symptoms in making an adverse credibility finding. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006). Similarly, an ALJ may consider the lack of supporting objective medical evidence in "determining the severity of the claimant's pain." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). As denoted above, plaintiff sought treatment only four times during the approximately two-year adjudication period. Tr. 366-84. During two of these visits, she did not make any pain complaints or otherwise report any symptoms related to her allegedly disabling impairments. *See* Tr. 370, 373 (seeking care for congestion and a cough). A third visit was not to treatment-driven but rather required to re-initiate care with Dr. Goby after plaintiff had "not been seen" for a significant period of time. Tr. 377. Furthermore, examination findings surrounding the adjudication period were largely normal. Tr. 349, 367, 371, 374, 381-82; *see also* Tr. 385-86, 477 (Dr. Goby observing "symptom magnification" during two examinations).

The foregoing discussion reveals that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom statements. As a result, this Court need not discuss all of the reasons provided by the ALJ because at least one

---

[1] Plaintiff does not address this aspect of the ALJ's decision in her opening brief and neglected to file a reply brief. As a result, there is no other information before the Court explaining plaintiff's infrequent medical visits and failure to comply with Dr. Goby's recommendations.

9 – OPINION AND ORDER

legally sufficient reason exists. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ's credibility finding is affirmed.

## III. Lay Testimony

Plaintiff asserts that the ALJ neglected to provide a germane reason to reject the testimony of her mother (Ms. Lingo), sister (Ms. Killinger), and daughter (Ms. Contreras). Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina*, 674 F.3d at 1114 (citation omitted). The ALJ must provide "reasons germane to each witness" in order to reject such testimony. *Id.* (citation and internal quotation omitted).

In April 2014, Ms. Lingo, Ms. Killinger, and Ms. Contreras each authored a letter in support of plaintiff's disability claim.[2] Tr. 339-44. Their statements generally reflect that plaintiff did not engage in many regular daily activities beyond visiting with family, occasional household chores, occasional shopping, and short-term babysitting. Tr. 271-78, 339-44. They observed further that plaintiff seemed anxious and in pain, such that she needed to frequently alternate between sitting and standing, and rarely left the house. *Id.*

The ALJ afforded "little weight" to the opinions of Ms. Lingo, Ms. Killinger, and Ms. Contreras because "they align closely with [plaintiff's] discredited subjective reports and are not

---

[2] In May 2012, Ms. Contreras also completed a Third-Party Adult Function Report; plaintiff does not rely on or otherwise cite to that evidence on appeal. Pl.'s Opening Br. 15; Tr. 271-78. In any event, the Court notes that, at a minimum, the lay testimony was generated five months after the date last insured and is not offered retrospectively. Tr. 271-78, 339-44; *see also Morgan v. Colvin*, 2013 WL 6074119, *10 (D. Or. Nov. 13, 2013) ("while post-date last insured evidence cannot be rejected solely as remote in time, it can be rejected on the grounds that the evidence itself is not retrospective") (citations and internal quotations and brackets omitted).

10 – OPINION AND ORDER

consistent with the scant objective evidence." Tr. 21. An ALJ may reject lay testimony on same basis as the claimant's discredited subjective reports. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Likewise, inconsistency with the evidence of record is a germane reason to reject a third-party's statements. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).

An independent review of the record reveals that Ms. Lingo's, Ms. Killinger's, and Ms. Contreras's testimony concerning plaintiff's functional limitations closely tracks plaintiff's subjective symptom statements. *See* Pl.'s Opening Br. 16 ("the lay witness statements reflected the same impairments described by plaintiff in her function report"). As addressed in section II, the ALJ provided specific, clear and convincing reasons, supported by substantial evidence, to find plaintiff less than fully credible. These reasons are equally applicable to the statements provided by Ms. Lingo, Ms. Killinger, and Ms. Contreras. The ALJ's evaluation of the lay witness testimony is upheld.

## IV. Medical Opinion Evidence

Plaintiff contends that the ALJ erred by failing to afford controlling weight to the opinions of Drs. Westfall and Jensen. There are three types of acceptable medical opinions in Social Security cases: those from treating, examining, and non-examining doctors. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Id.* As such, the ALJ need only refer to "specific evidence in the medical record" in order to reject the opinion of

11 – OPINION AND ORDER

a non-examining doctor. *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998) (citation omitted).

In 2006, Drs. Westfall and Jensen assessed plaintiff with a sedentary RFC in relation to her prior disability claim. Tr. 491-98. The ALJ gave "little weight" to the "historical" opinions of Drs. Westfall and Jensen because plaintiff "went on to work for approximately three and one-half years at a bowling alley performing light work per the Dictionary of Occupation Titles that she [actually] performed at the heavy exertional lev[e]l." Tr. 21. The ALJ also noted the more recent state agency consulting source opinions from Roy Brown, M.D., and Lloyd Wiggins, M.D., which were rendered in 2012 and 2013 and reflected that plaintiff was cable of a limited range of light work. *Id.*

An ALJ can reject a medical opinion that is inconsistent with the evidence of record. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Moreover, medical reports that predate the onset of disability ordinarily are of limited relevance. *Carmickle*, 533 F.3d at 1165.

Substantial evidence supports the ALJ's conclusion in the case at bar. Plaintiff worked for several years after the prior adjudication period at a greater-than-sedentary exertional level; indeed, plaintiff's own remarks from the 2008 hearing belie the findings of Drs. Westfall and Jensen. *Compare* Tr. 76, *with* Tr. 491; *see also Weetman v. Sullivan*, 877 F.2d 20, 22-23 (9th Cir. 1989) (affirming the ALJ's rejecting of a treating physician's opinion that that claimant was "totally" disabled as of 1979 because, amongst other reasons, it "is clearly inconsistent [with the fact that the claimant] engaged in substantial gainful activity during the 1981 calendar year"). In addition, new and material medical evidence was generated after plaintiff's previous claim, and Drs. Brown and Wiggins reviewed that evidence in rendering their opinions. Tr. 129-32, 148-50.

12 – OPINION AND ORDER

Finally, the evidence that plaintiff cites to in support of the assertion that her conditions "continued to worsen after 2007" is unpersuasive. Pl.'s Opening Br. 9. Namely, plaintiff's subjective complaints to Dr. Goby, which predate the alleged onset date, do not undermine the ALJ's evaluation of the medical evidence. *See Tommasetti*, 533 F.3d at 1041 (ALJ need not accept a medical opinion that is based "to a large extent on a claimant's self-reports that have been properly discounted as incredible") (citation and internal quotations omitted). When read chronologically, the evidence that plaintiff relies on from Dr. Thrall reflects that her pain and functioning improved after her 2009 on-the-job injury. Tr. 349-61. The ALJ's evaluation of the medical opinion evidence is affirmed.

## V. Duty to Develop the Record

Plaintiff maintains that the ALJ should have "request[ed] a consultative examination" because "Dr. Goby did not cooperate," in that he neglected to furnish a medical source statement. Pl.'s Opening Br. 17-18. The claimant bears the burden of proving the existence or extent of an impairment, such that the ALJ's limited "duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Initially, the record clearly demonstrates both the Commissioner's and Dr. Goby's compliance with the federal regulation that plaintiff relies on support of her argument – *i.e.*, 20 C.F.R. § 404.1512(e). Tr. 335-36, 427-35, 475-89; *see also* 20 C.F.R. § 404.1512(d) (defining the Commissioner's duties in regard to soliciting evidence from the claimant's medical sources).

13 – OPINION AND ORDER

In any event, this case has been ongoing for several years and the date last insured lapsed in 2011. Neither the ALJ nor any medical source found the record to be ambiguous or inadequate for evaluation. Rather, plaintiff simply neglected to introduce any acceptable medical evidence regarding her functional abilities. *See* 20 C.F.R. § 404.1512(c) (claimant bears the burden of producing medical evidence concerning the severity of the alleged impairments); *see also* Tr. 476-78 (in response to her request for a disability letter, Dr. Goby examined plaintiff, noting her "migratory symptoms," before making her "aware that her [allegedly disabling knee] pain was not associated with any objective findings" and referring her to imaging services), 480 (subsequent normal knee x-ray). Plaintiff's failure to carry her burden of proof, however, does not equate with an ambiguity or inadequacy in the record, or otherwise indicate that Dr. Goby was uncooperative.[3] The ALJ's duty to more fully develop the record was not triggered.

## VI.   Step Five Finding

Plaintiff argues that the ALJ's step five finding is erroneous because it did not account for all of the limitations set forth in her testimony, the third-party statements, and the opinions of Drs. Westfall and Jensen. Plaintiff also contends the step five finding is deficient because "the ALJ did not make a determination of how frequently [she] would have to alternate sitting or standing or that the jobs identified by the VE were structured to allow sitting and standing at will." Pl.'s Opening Br. 20.

---

[3] The Court finds plaintiff's argument in regard to this issue somewhat curious given that Dr. Goby counseled plaintiff to obtain a functional capacity evaluation in association with her disability claim, but she refused. Tr. 430-31.

14 – OPINION AND ORDER

### A.   Failure to Account for Limitations

The RFC is the maximum a claimant can do despite her limitations. 20 C.F.R. § 404.1545. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of the relevant medical and other evidence," including the claimant's testimony. SSR 96–8p, *available at* 1996 WL 374184. Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

As addressed herein, the ALJ properly discredited plaintiff, the lay testimony, and the opinions of Drs. Westfall and Jensen, and there is no indication, outside of this evidence, that plaintiff suffered from functional limitations beyond those outlined in the RFC during the relevant time period. Thus, plaintiff's argument, which is contingent upon a finding of harmful error in regard to the aforementioned issues, is without merit. *Bayliss*, 427 F.3d at 1217-18; *Stubbs-Danielson*, 539 F.3d at 1175-76.

### B.   Sit/Stand Determination

Where the need to alternate between sitting and standing "cannot be accommodated by scheduled breaks and a lunch period," the ALJ's RFC "assessment must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, *available at* 1996 WL 374185. Courts within the Ninth Circuit have held that a restriction in the RFC to "sitting or standing 'at will'" adequately satisfies this ruling. *Brown v. Colvin*, 2014 WL 6388540, *8 (D. Or. Nov. 13, 2014) (collecting cases).

Here, the ALJ's decision did not explicitly define frequency in relation to plaintiff's sit/stand option. Tr. 18. Regardless, the dispositive hypothetical question posed to the VE included a restriction "to alternate between sitting and standing positions as needed." Tr. 53. The VE clearly understood the ALJ's question to refer to a "sit and stand at will" option. Tr. 54. Accordingly, because the VE actually considered frequency – i.e., alternating positions "at will" or "as needed" – in determining that a significant number of representative occupations existed, any error was harmless. *See Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Ruiz v. Colvin*, --- Fed.Appx. ---, 2016 WL 158672, *2 (9th Cir. 2016) (affirming the ALJ's step five finding where the "inclusion of a sit/stand 'at will' option . . . was considered at the administrative hearing and addressed by the vocational expert"). The ALJ's step five finding is upheld.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED this _2_ day of August, 2016.

_____
Owen M. Panner
United States District Judge